J-S09007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AMY L. GIPE, | : | |
| | : | No. 1060 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence December 21, 2016
in the Court of Common Pleas of Franklin County
Criminal Division at No.:  CP-28-CR-0001978-2015

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                              **FILED JUNE 07, 2018**

Appellant, Amy L. Gipe, appeals from the judgment of sentence imposed following her jury conviction of murder of the first degree and related offenses, as made final by the denial of her post-sentence motion.[1]  The court imposed an aggregate sentence of life imprisonment.   Appellant challenges the sufficiency and the weight of the evidence.   We affirm.

---

[1] The original caption of the case incorrectly indicated the date of the judgment of sentence as June 29, 2017.  Appellant properly appealed from the judgment of sentence imposed on December 21, 2016 (as made final by the denial of her post-sentence motions).  (**See** Notice of Appeal, 6/29/17); **see also Commonwealth v. Chamberlain**, 658 A.2d 395, 397 (Pa. Super. 1995) (order denying post-sentence motions acts to finalize judgment of sentence for purposes of appeal; appeal is taken from judgment of sentence, not order denying post-sentence motions).  We have amended the caption accordingly.

---

\*   Retired Senior Judge assigned to the Superior Court.

We derive the facts of this case from the trial court's Rule 1925(a) opinion, filed August 29, 2017, relying on the trial court's order and opinion filed May 31, 2017, denying Appellant's post-sentence motion, and our independent review of the record.

Late in the evening of July 18, 2013, about 11:15 p.m., David Gipe was fatally shot on the street as he arrived home after his second-shift job. He died a few minutes later, in the arms of Appellant, his wife, Mrs. Gipe.

Suspicion soon fell on Kevin D. Rouner, who was familiar to neighbors from his frequent visits to Appellant while her husband was away at work. Neighbors investigating the sound of the gunshot saw a Dodge Durango speeding away. Rouner often drove his father's Dodge Durango when he visited Mrs. Gipe while Mr. Gipe was at work.

When the police began their investigation, Rouner claimed that he was a talent manager helping Mrs. Gipe's teenage daughters pursue careers in modeling and singing, although he had no apparent expertise or experience in the field of entertainment. Some family and friends suspected that Rouner's claim of talent management, including a group field trip to Ohio to attend an audition for the program "America's Got Talent," was only a pretext to spend time with Appellant, Mrs. Gipe.

Rouner also denied owning a gun, but it turned out that before the murder, he had borrowed a 12-gauge shotgun (consistent with the murder

weapon) from a cousin for "indoor skeet shooting," and never returned it. Shortly after the police investigation began, Rouner fled to Florida.

Appellant initially sought to obscure Rouner's role in her life, and deny romantic involvement with him, claiming he had a medical condition (not readily identifiable from the record before us) which she suggested made him unsuitable as a lover. It also developed that Appellant was apparently having simultaneous affairs with two other men, William Cardwell, and Freddy Altice. Both Cardwell and Altice provided financial support to Appellant.

After initial denials, Rouner admitted to the police that he had been in Chambersburg (where the Gipes lived, not home in another town) the night of the murder, driving the Dodge Durango. Mrs. Gipe eventually admitted to a romantic relationship with Rouner, but denied any involvement in a murder plot.

Central cell phone records confirmed frequent calls and text messages between Rouner and Appellant Mrs. Gipe (even though the calls had been deleted on their phones), in particular on the night of the murder, as Rouner approached the Gipes' residence, a few minutes before the shooting. The cell phone provider recovered the content of numerous messages between Appellant and Rouner. Most were romantic or sexually suggestive, but the night before the shooting, in an appeal to visit with Mrs. Gipe the next day, Rouner did claim that all hell was about to break loose.

The trial court found that the messages were also indicative of planning and knowledge of David Gipe's murder. (**See** Trial Court Opinion, 5/31/17, at 11). Appellant concedes that there was a fifty-two minute telephone conversation on the night of the shooting. (**See** Appellant's Brief, at 14). Rouner resumed phone contact the next morning (even though, as it turned out, Appellant had called Mr. Cardwell first). The conversation between Rouner and Appellant assumed, without further explanation, that Mr. Gipe was dead.

Mrs. Gipe was eventually charged with murder of the first degree (as an accomplice to Rouner), 18 Pa.C.S.A. § 2502;[2] solicitation to commit murder,

_____

[2] Section 2502 provides, in pertinent part:

   **(a) Murder of the first degree.—**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

   \* \* \*

   **(d) Definitions.--**As used in this section the following words and phrases shall have the meanings given to them in this subsection:

   \* \* \*

   **"Intentional killing."** Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

18 Pa.C.S.A. § 2502(a); (d).

J-S09007-18

18 Pa.C.S.A. § 902;[3] conspiracy to commit murder, 18 Pa.C.S.A. § 903;[4] and

hindering apprehension or prosecution, 18 Pa.C.S.A. § 5105.[5]

_____

[3] Section 902 provides, in pertinent part:

> **(a) Definition of solicitation.─**A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

18 Pa.C.S.A. § 902.

[4] Section 903 provides, in pertinent part:

> **(a) Definition of conspiracy.─**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a)(1), (2).

[5] Section 5105 provides, in pertinent part:

> **(a) Offense defined.─**A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, he:
>
> (1) harbors or conceals the other;

Rouner was charged with first-degree murder. The two were tried jointly. The Commonwealth's theory of the case was that Appellant solicited Rouner to kill her husband with the prospect that she and Rouner would then get married, and she would have his baby.[6] The jury convicted them of all charges.[7] The court sentenced Appellant to life on the murder conviction. The remaining sentences were made concurrent.

_____

(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;

(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;

(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or

(5) provides false information to a law enforcement officer.

18 Pa.C.S.A. § 5105.

[6] Mr. Rouner referred to himself in the phone messages as "Dad" because Appellant had told him what a great father he would be. (**See** Trial Ct. Op., 5/31/17, at 11 n.8). Nevertheless, the trial court observes that the evidence suggested it was more likely that Appellant had duped Rouner, and she actually intended to take up a relationship with Cardwell. (**See id.** at 22).

[7] The conviction of Appellant's co-defendant Rouner is the subject of a separate companion appeal at 1018 MDA 2017.

Appellant filed a post-sentence motion challenging the weight and sufficiency of the evidence. (**See** Post-Sentence Motion, 1/03/17). The trial court denied it. (**See** Order and Opinion, 5/31/17). This timely appeal followed.

Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant filed a court-ordered statement of errors, following the grant of an extension. **See** Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) statement, on August 29, 2017, referencing and relying on its May 31, 2017 Opinion and Order, which denied Appellant's post-sentence motion. (**See** 1925(a) Statement, 8/29/17); **see also** Pa.R.A.P. 1925(a).

Appellant presents two questions on appeal:

> 1. Did the trial court commit reversible error when it denied Appellant's Post-Sentence Motion in Arrest of Judgment when the trial court concluded that the evidence presented by the Commonwealth was sufficient to sustain the jury's guilty verdicts on Murder in the First Degree, Conspiracy to Commit Murder in the First Degree, Solicitation to Commit Murder in the First Degree and Hindering Apprehension?
>
> 2. Did the trial court commit reversible error when it denied Appellant's Post-Sentence Motion for a New Trial by finding that her convictions for Murder in the First Degree, Conspiracy to Commit Murder in the First Degree, Solicitation to Commit Murder in the First Degree and Hindering Apprehension? [sic]

(Appellant's Brief, at 4).[8]

---

[8] Appellant's second question is incomplete on its face. However, the argument section of the brief and other references in the record confirm that her second issue is a challenge to the weight of the evidence. We review the weight claim as if it were properly presented in the statement of questions involved, in the interest of judicial economy.

- 7 -

Our standard of review for a challenge to the sufficiency of the evidence is well-settled.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

> To convict a defendant of first degree murder, the Commonwealth must establish a human being was unlawfully killed, the defendant was responsible for the killing, and the defendant acted with malice and a specific intent to kill. ***See*** 18 Pa.C.S. § 2502(a)[.]*,* The Commonwealth may use wholly circumstantial evidence to discharge its burden of showing the accused intentionally killed the victim, (citations omitted), and circumstantial evidence can itself be sufficient to prove any or every element of the crime[.]

***Commonwealth v. Perez***, 93 A.3d 829, 841 (Pa. 2014), *cert. denied*, 135 S. Ct. 480 (2014) (case citations omitted). "[T]he Commonwealth need not establish guilt to a mathematical certainty. [W]here no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." ***Commonwealth v. Kinard***, 95 A.3d 279, 291–92 (Pa. Super. 2014) (case citations and internal quotation marks omitted).

In this appeal, Appellant's insufficiency issue fails to develop any specific claim that there was an element of the conviction that was not proven. (*See* Appellant's Brief, at 12-18). Instead, apart from a general denial, Appellant merely maintains that the evidence against her is "minimal," (Appellant's Brief, at 14), and the conclusion that she participated in her husband's murder is a "grand leap." (*Id.* at 15). We disagree.

Appellant misapprehends our standard of review, which views the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences to be drawn from that evidence. *See Widmer*, *supra* at 751.

Viewed in that light, we have no hesitation or difficulty in agreeing with the trial court that the evidence presented to the jury was sufficient to sustain the verdict beyond a reasonable doubt as to each of the offenses. (*See* Opinion and Order, 5/31/17, at 18).

The evidence tended to show that Appellant had a problematic marriage with a reported history of domestic disturbance. This was Mrs. Gipe's third marriage. There were financial difficulties. Appellant accepted financial benefits from several men simultaneously. She had been having an affair with Mr. Cardwell for ten years. Mr. Gipe had a life insurance policy of $137,000 from his employer. Mrs. Gipe had, but denied, an affair with Mr. Rouner. Appellant told Mr. Rouner that she wanted to marry him and have his baby. The pair exchanged extensive cell phone text messages, which they denied

and tried to delete.  Mrs. Gipe minimized her involvement with Rouner in her conversations with the police.

In the totality of circumstances, we conclude that there was sufficient evidence to establish beyond a reasonable doubt that Appellant solicited the murder, cooperated in its execution, and tried to hinder the apprehension of the shooter, her lover, Mr. Rouner, by misleading the police about the extent of their relationship.  Appellant's first issue does not merit relief.

In her second claim, Appellant challenges the weight of the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.  Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.  An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror.  Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Widmer**, **supra** at 751–52 (citations, internal quotation marks, and footnote omitted).  Additionally,

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial

- 10 -

court's determination that the verdict is against the weight of the evidence. One of the **least assailable** reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 753 (emphasis added) (citations omitted).

Here, the trial court carefully reviewed the evidence admitted at trial and decided that the verdict was entirely consistent with the evidence presented. (**See** Order and Opinion, 5/31/17, at 24). We discern no basis on which to disturb the trial court's conclusion.

Appellant argues that the trial court heavily relied "in its 1925 Opinion," on her efforts to conceal her "numerous, coterminous affairs," as the improper basis to conclude that the jury's verdict was not against the weight of the evidence. (Appellant's Brief at 20).

The reference to the trial court's Rule 1925(a) statement is a transparent error. The 1925(a) statement contains no substantive argument whatsoever, and merely refers to the Order and Opinion denying the post-sentence motion.

Moreover, the trial court in its order and opinion makes no direct reference to Appellant's affairs for the weight review. (**See** Trial Ct. Op., 5/31/17, at 23-24). In any event, while Appellant's various affairs provided some evidence of motive, and completed the history of the case, she points us to nothing in the record which suggests that the jury was improperly swayed in its verdict by the evidence of her marital infidelities. The argument

is undeveloped, unsupported, and unpersuasive. We discern no basis on which to disturb the discretion of the trial court. Appellant's weight claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2018